

Opinions of the United
States Court of Appeals
for the Third Circuit

2006 Decisions

5-10-2006

# In Re: Trans World

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2260

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Trans World " (2006). *2006 Decisions*. Paper 1129.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1129

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2260

IN RE: TRANS WORLD AIRLINES, INC.,
Debtor

AMERICAN AIRLINES, INC.,
Appellant
v.
ELIZABETH A.M. ROBINSON

MARK S. KENNEY,
Trustee

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 04-cv-00234)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2006

Before: RENDELL, SMITH and ALDISERT, <u>Circuit</u> <u>Judges</u>.

(Filed May 10, 2006)

OPINION OF THE COURT

RENDELL, *Circuit Judge.*

This appeal arises out of the chapter 11 bankruptcy of debtors Trans World

Airlines, Inc. and certain of its affiliated entities (collectively, "TWA"). The appellant is American Airlines, Inc. ("American"), the purchaser of substantially all of TWA's assets. On March 24, 2003, Elizabeth Robinson filed a motion in the Bankruptcy Court seeking to compel American to pay her certain benefits under the Federal Longshoremen's and Harbor Workers' Act (the "Longshoremen's Act"). Robinson argued that American assumed this obligation under the terms of the Asset Purchase Agreement ("APA") in which it purchased substantially all of the assets of TWA.

On February 27, 2004, the Bankruptcy Court entered an order granting certain relief requested by Robinson. The Bankruptcy Court ordered American to make workers' compensation payments to Robinson in the amount of $1,866.32 per month, commencing April 9, 2001. The District Court affirmed the Bankruptcy Court's order. American argues that the Bankruptcy Court and District Court were incorrect in their conclusion that American had assumed any liability to pay Robinson pursuant to the APA. We will affirm the order of the District Court.[1]

_____

[1]The Bankruptcy Court had jurisdiction to review Robinson's motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. The District Court had jurisdiction pursuant to 28 U.S.C. § 158. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 158 and 1291. We have plenary review of the District Court's determination, exercising the same review of the Bankruptcy Court's decision as that exercised by the District Court. *Airline Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 128 (3d Cir. 1997). We review the Bankruptcy Court's findings of fact only for clear error and its legal determinations *de novo*. *Id.*

## I.

Robinson is a former flight attendant of TWA who sustained a work-related injury during a flight between Paris and New York on January 31, 1984. She was permanently disabled. Shortly thereafter, she began receiving benefits in accordance with a collective bargaining agreement between TWA and the Independent Federation of Flight Attendants (the "IFFA"), dated April 12, 1983 (the "CBA"). Article 20(D)(2) of the CBA provided that "[t]he Company will provide benefits for the Flight Attendants in International Operations in accordance with either the Workers' Compensation laws of the State of New York or the Federal Longshoremen's Act, whichever provides the higher benefits." App. 220. At the time of Robinson's injury, the Longshoremen's Act provided higher benefits than those provided under New York state law. Accordingly, TWA became obligated to and provided benefits to Robinson in accordance with the union contract at the higher Longshoremen's Act level.

On August 13, 1992, TWA and the IFFA entered into an amended collective bargaining agreement (the "Amended CBA"). Though American has been unable to produce the actual Amended CBA, American now asserts that the Amended CBA "clarified" that permanently disabled employees were not entitled to Longshoremen's Act benefits. Regardless of this purported intended meaning of the Amended CBA, TWA continued paying Robinson's Longshoremen's Act benefits.

On January 9, 2001, TWA and American entered into the APA, whereby

3

American agreed to purchase substantially all of TWA's assets, subject to an auction and sale pursuant to section 363 of the Bankruptcy Code. Under the APA, American agreed to assume "[a]ll workers' compensation obligations for all employees of TWA and the other Sellers as of the Closing Date calculated in accordance with methods, principles, practices and policies employed in the preparation and presentation of the September Balance Sheet and with generally accepted accounting principles consistently applied." App. 242-243. The next day, on January 10, 2001, TWA filed voluntary petitions for relief under chapter 11. On March 12, 2001, the Bankruptcy Court entered an order approving the sale of substantially all of TWA's assets to American in accordance with the terms of the APA. At about this time, TWA ceased paying Longshoremen's Act benefits to Robinson. However, TWA's insurance carrier continued to pay her New York State workers' compensation benefits.

In December 2002, TWA and Robinson entered into a settlement agreement, whereby TWA paid her $25,000 for settlement of the five proofs of claims she had filed against TWA in the bankruptcy proceeding. However, American was not a party to this post-APA settlement agreement. On March 24, 2003, Robinson filed a motion with the Bankruptcy Court seeking to compel American to pay her the benefits she believed she was entitled to under the Longshoremen's Act. The Bankruptcy Court reviewed evidence and took testimony. On February 27, 2004, the Bankruptcy Court entered an order granting the relief requested in Robinson's motion. The Court ordered American

4

to make workers' compensation payments to Robinson in the amount of $1,866.32 per month, retroactive to April 9, 2001. All accrued but as yet unpaid monthly payments were to be calculated with interest from the dates of accrual at the rate established by 28 U.S.C. § 1961. The Bankruptcy Court also issued a letter opinion setting forth its reasoning: first, TWA had a continuing obligation to Robinson that was not extinguished by the Amended CBA; second, American assumed the ongoing obligation to Robinson by virtue of the terms of the APA; and, third, Robinson's settlement with TWA did not affect American's obligation to her. American appealed the order of the Bankruptcy Court to the District Court. On March 28, 2005, the District Court entered an order affirming the Bankruptcy Court's order.

## II.

American now advances three arguments on appeal. First, American argues that TWA had no obligation to provide Robinson with Longshoremen's Act benefits after the effective date of the Amended CBA (August 13, 1992), which American argues eliminated TWA's obligation to provide Longshoremen's Act benefits to permanently disabled employees. Second, American argues in the alternative, even if TWA did have an obligation to provide Robinson with Longshoremen's Act benefits under the Amended CBA, American did not assume that liability, and, even if it did assume that liability, the total amount of such obligation was no more than $446.30, the pro-rata amount of TWA's Longshoremen's Act obligation to Robinson as of the closing date of

5

the sale to American. Third, American argues that, as a successor of TWA, it was released of any obligation to Robinson by the December 2002 settlement agreement between TWA and Robinson. As discussed below, we find these arguments unpersuasive.

A.

The pivotal issues are, first, whether, at the time of the APA, TWA had an obligation to pay Robinson, and, second, what "obligation" was assumed by American by virtue of the APA. American argues that TWA no longer had an obligation to pay Robinson's Longshoremen's Act benefits under the Amended CBA. We find this unconvincing. First, we note that this does not appear to have been TWA's interpretation of the Amended CBA. TWA continued to pay Robinson Longshoremen's Act benefits for more than eight years after the effective date of the Amended CBA and until its bankruptcy and sale of substantially all assets to American. Second, the Amended CBA specifically states that TWA "agrees that it will not challenge nor attempt to reduce any permanent disability benefits, mistakenly awarded prior to the effective date of the new Agreement and computed using the Federal Longshoremen's and Harbor Worker's Act...." App. 820 (emphasis omitted). Thus, even if we accept American's argument that the Amended CBA was designed to "clarify" that permanently disabled employees are not entitled to Longshoremen's Act benefits, the Amended CBA was clearly intended only to forestall claims by future disabled employees and not to apply

6

retroactively to those employees already receiving benefits. Therefore, we do not believe that the Bankruptcy Court erred in its conclusion with respect to the effect of the Amended CBA. American's argument is belied both by the extrinsic evidence of TWA's continued payments to Robinson and the plain language of the Amended CBA.

American next argues that the Bankruptcy Court erred in finding that American had assumed any of TWA's obligation to Robinson under the APA. American also argues that, if we find that it is obligated to Robinson under the APA, we should find that it is only obligated to pay Robinson for $446.30, which American argues is the pro-rata amount of TWA's Longshoremen's Act obligation to Robinson as of the APA's closing date. We find these arguments equally unpersuasive.

When American purchased substantially all of TWA's assets, it agreed to assume "[a]ll workers' compensation obligations for all employees of TWA and the other Sellers as of the Closing Date calculated in accordance with methods, principles, practices and policies employed in the preparation and presentation of the September Balance Sheet and with generally accepted accounting principles consistently applied." App. 243. The Bankruptcy Court found that the obligation assumed by American pursuant to the APA was based upon the calculation of worker's compensation obligations as then set forth in TWA's records. Further, it found that TWA's own accounting reflected its continued obligation to pay Robinson $1,866.32 per month. The Bankruptcy Court concluded that the term "all worker's compensation obligations" included TWA's obligations to pay

7

Robinson at the higher Longshoreman's Act rate. We will not disturb the Bankruptcy Court's interpretation of the APA.

B.

Finally, we find no error in the Bankruptcy Court's conclusion that Robinson's December 2002 settlement with TWA did not extinguish American's obligation to pay benefits to Robinson. As the Bankruptcy Court observed, American's assumption of TWA's obligation to Robinson occurred on April 9, 2001 when the APA became effective. Because Robinson's settlement with TWA was executed after American had already assumed the obligation, the settlement agreement did not encompass American's separate obligation to Robinson. Moreover, as the Bankruptcy Court noted, the settlement agreement released the "Debtors" and the "Estate"; it did not release successor entities such as American. Further, the release provision specifically provides that "nothing herein shall be construed or operate in any way to alter or release ... American Airlines, Inc. ("American") from any alleged liability they may have to Robinson." App. 354. Thus, the release specifically carved out any claim Robinson might have against American. In addition, as the Bankruptcy Court observed, American was not a party to the settlement agreement and does not appear to have even been aware of the agreement until after it was executed. The Bankruptcy Court found that it was "quite apparent from the settlement agreement that TWA thought Ms. Robinson had a continuing right to assert a claim against American." We find no error in the Bankruptcy Court's analysis or

8

conclusion in this regard.

III.

For the foregoing reasons, we will affirm the order of the District Court affirming the order of the Bankruptcy Court.